# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**RANDALL LAMONT ROLLE,**

    Petitioner,

vs.

                                  **CASE NO. 4:06cv452-SPM/WCS**

**JAMES McDONOUGH,**

    Respondent.

_____/

## REPORT AND RECOMMENDATION

    This is a petition for writ of habeas corpus filed by Randall Lamont Rolle pursuant to 28 U.S.C. § 2254.  Doc. 1.  Petitioner challenges his conviction for possession of a firearm having been previously convicted of a felony in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 2002-CF-4016.  Respondent filed an answer, doc. 27, and Petitioner filed a traverse, doc. 30.  Respondent concedes that the petition was timely filed and that Petitioner exhausted state court remedies as to the claims presented here.  Doc. 27, pp. 4-5.

**Procedural History**

As explained in the answer, on December 15, 2003, Petitioner was charged with attempted second degree murder (count one), aggravated assault with a deadly weapon (count two), possession of a firearm as a convicted felon (count three), and possession of cocaine (count four).  Counts one and two were severed, and after a jury trial, Petitioner was found not guilty.  Doc. 27, p. 2.

On February 12, 2004, Petitioner entered a guilty plea to count three, possession of a firearm as a convicted felon.  *Id*.  He was sentenced to five years in prison, to be followed by two years of community control and five years of probation.  *Id*.  This conviction is the subject of the petition for writ of habeas corpus in this case.

Petitioner also filed a petition for writ of habeas corpus in case number 4:06cv293-SPM/WCS.  The facts and record overlap, and I ordered Respondent to file a consolidated response to that petition and this petition.  Doc. 16 in case number 4:06cv293-SPM/WCS.  I entered a report and recommendation in case number 4:06cv293-SPM/WCS on November 1, 2007, doc. 46 in that case, which remains pending.  Respondent filed a number of exhibits in that case and has referred to those in this case.  Doc. 37 in case number 4:06cv293-SPM/WCS.  Hence, I will treat the two cases as consolidated for purposes of reference to the exhibits filed in document 37, case number 4:06cv293-SPM/WCS, and all references are to those exhibits.

**Section 2254 Standard of Review**

For claims that were properly exhausted and adjudicated in state court, this court's review is limited.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute). Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted); Carey v. Musladin, 549 U.S. __, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146 L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.  See also, Panetti v. Quarterman, __ U.S. __, 127 S.Ct. 2842, 2858-2859, 168 L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams, other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in original).  Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it."  Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159 L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable

professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001). *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing Chandler). There are no rigid requirements or absolute duty to investigate a particular defense. Fugate v. Head, 261 F.3d at 1217.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

*Id.*

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Gordon v. United States, 496 F.3d 1270, 1277 (11th

Cir. 2007), *quoting*, Hill.  The "prejudice" inquiry in the context of a guilty plea "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial."  Hill, 474 U.S. at 59, 106 S.Ct. at 370.  In other words, the question of whether a defendant would have insisted upon going to trial had attorney error not occurred with respect to the guilty plea will turn in large part upon whether the defendant might reasonably have achieved a more favorable outcome had he gone to trial.  United States v. Rosario, 902 F.2d 55, 58 (D.C. Cir.), *cert. denied*, 498 U.S. 942 (1990).

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.  Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.  *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received").

Hill, 474 U.S. at 59, 106 S.Ct. at 370-371.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim

on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

A state court's adjudication of an ineffective assistance claim does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently.  Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852.  To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Claims presented**

Petitioner presents two claims.  First, he contends his attorney was ineffective for failing to file a motion to suppress evidence seized in two houses during a search without a warrant on October 25, 2002.  The residences were 1500 Cleveland Street, Tallahassee, Florida, 32310, and 10264 F. A. Ash Way, Tallahassee, Florida, 32311.  Second, he contends his plea was involuntary because he was advised by his attorney that he still could appeal this search issue but failed to preserve the search issue by filing a motion to suppress.

Petitioner's factual allegations are difficult to follow.  The gist of his claim appears to be that the first search was based upon evidence supplied to the police by

Petitioner's brother, Ronald Rolle, and his brother's girlfriend, Nicole Robinson, that Petitioner had stolen $8,000 through identity theft. Doc. 1, p. 4. Petitioner represents that the police were investigating a "shot gun wound," and we find that the wound was suffered by his brother. *Id*. The shooting was allegedly in retaliation for the brother and his girlfriend reporting identity theft by Petitioner *Id*. Ronald Rolle allegedly told police officers that he was "the only renter on the lease" to 1500 Cleveland Street, and he "gave consent to enter." *Id*. Petitioner contends this was false in that Ronald Rolle was not lessee and his driver's license listed an Ocala address. *Id*. Later, Petitioner makes reference to a "stolen house key" but does not explain the relevance of this. *Id.*, p. 4a. He asserts that Ronald Rolle did not have authority to consent to this search of the first house. *Id.*, p. 4 b. The search of 1500 Cleveland Street allegedly took place based upon this consent, without a warrant. *Id.*, p. 4. Petitioner contends the search of 1500 Cleveland Street was invalid because without a warrant or a valid consent.

    Petitioner asserts that he was then arrested at 10264 F. A. Ash Way by the United States Marshal's violent fugitive TASC force. The firearm that is the subject of Petitioner's conviction was found during this arrest. Petitioner contends that the firearm was unlawfully obtained and should have been suppressed. *Id.*, p. 4a.

    Petitioner contends that his trial attorney, Kenneth David, refused to file a motion to suppress the evidence as requested by Petitioner. *Id.*, p. 4c. Petitioner asserts that he then moved to have David disqualified, and a hearing was held on December 2, 2003. *Id*. Petitioner contends this was ineffective assistance of counsel.

    Petitioner also alleges that when he was arrested at 10264 F. A. Ash Way, he was in the laundry room after climbing down from the attic. *Id.*, p. 5. He claims that the

Case No. 4:06cv452-SPM/WCS

firearm of the conviction, a shotgun, was not found in the attic, but inside a bedroom. *Id*. Petitioner faults another attorney, David Collins, for not preserving the Fourth Amendment issues for appeal.  *Id.*, p. 5b.

**The merits of the claims**

### The trial court's ruling

The trial court denied this claim.  The court reasoned:

> Lawyers do not have any obligation to file a motion that is not supported by the facts and the law.  Here, the violent felony task force had in its possession an arrest warrant for the defendant.  When they located him in the attic of the house in which he was hiding, the shotgun and the firearm were found in the location where he had been hiding.  The finding of the firearms was incidental to the arrest, a search warrant was not required, and based on the circumstances, no lawyer involved in this case was ineffective for failing to file a motion to suppress when clearly such a motion would have been frivolous.

Ex. NNN, order denying Defendant's motion for post conviction relief, pp. 5-6 (R. 105-106[1]).

### Evidence from the Rule 3.850 hearing

On August 1, 2005, the state court held an evidentiary hearing on Petitioner's Rule 3.850 motion.  Ex. PPP (transcript), attached to doc. 37 in case number 4:06cv293 (hereafter all exhibits are those attached to doc. 37 in that case).  The hearing did not produce much in the way of evidence, no doubt because all of the evidence had been produced in the violation of probation hearing that preceded this hearing and at Petitioner's trial on the attempted murder charge.

---

[1] The page number of the record on appeal is printed in the lower right corner.

David Collins testified that he was trial attorney for Petitioner. Ex. PPP, p. 6. The transcript of the plea colloquy was consulted, and the state judge determined that Petitioner was told when he entered a guilty plea that he waived any right to appeal the issue of guilt, and could only appeal his sentence. *Id.*, pp. 9, 45. The paragraph was read into the record. *Id.*, pp. 9-10, 45. The court also noted that Petitioner expressly waived any right to present any defenses. *Id.*, p. 11.

Collins said that Petitioner's father had hired him a few days before the guilty plea was entered because Petitioner's father and Petitioner did not trust Petitioner's former attorney, Mr. David. *Id.*, p. 13. Collins said he reviewed David's entire file, and the jury had already been picked by David. *Id.*

The court then noted that Petitioner had had numerous lawyers in the case, including Gerland Lindgren, Lilja Dandelake, Frank Sheffield, Ken David, and David Collins. *Id.*, p. 15. Collins said he advised Petitioner to plead guilty because the evidence was overwhelming. *Id.*, p. 21. He said that his advice in part was due to the fact that Petitioner was "found up in an attic in possession of two firearms." *Id.*, p. 41. Another factor, said Mr. Collins, was that Petitioner had already *testified* in the attempted murder trial to having "shot his brother with a firearm but that it had been accidental." *Id.* Mr. Collins said he did not think he had a good faith basis to move to suppress any evidence in this case. *Id.*, p. 48.

Petitioner testified that he understood that by entering a guilty plea in this case, he gave up the right to appeal anything other than an illegal sentence, but having said that, claimed that he did not know he was giving up his right to challenge an unreasonable search or seizure by entering a guilty plea. *Id.*, p. 54.

> Later in the hearing, the state court said:
>
> And we're not talking about the suppression issue any more. You waived your right to any kind of a suppression issue. You waived it. So we're not going to talk about that any more.

*Id.*, p. 61. The court then referred to testimony from the violation of probation proceeding. *Id.*, p. 62. It was represented that Sergeant Mike Womble testified in that hearing that in the search that discovered the firearm that is the subject of this case, they had a *search* warrant. *Id.*, p. 63. Womble testified that he went into the attic and found a 12 gauge shotgun, the one that was involved in the attempted murder case, case number 2002-CF-0047, and another handgun. *Id*. The court then said there "was definitely an arrest warrant issued." *Id.*, p. 64.

The prosecutor, Ms. Ray, then told the court that Petitioner's brother, Ronald Rolle, gave the officers "the key to that residence and let them in," meaning the Cleveland Street residence. *Id.*, p. 64.

The court then told Petitioner that the search of the first house was irrelevant because "you were caught in an attic [of the second house on F. A. Ash Way] with a shotgun and a handgun. So the search warrant at another house is just not relevant." *Id.*, p. 65. Ms. Ray then said that Petitioner asked for the evidentiary hearing, and if he "wanted to present testimony regarding even if it was a relevant search, he should have subpoenaed people to be here." *Id.*, p. 66.

Petitioner argued that "the probable cause for the police to think that a crime had been committed was this $8,000 identity theft." *Id.*, p. 66. He contended that this alleged crime "wasn't true." *Id.*, p. 68.

**Evidence from the violation of probation hearing, case number 2002-CF-0047[2]**

At the violation of probation hearing on May 8, 2003, Ronald Rolle (Petitioner's brother) testified that he lived at 1500 Cleveland Street. Ex. NNN (transcript), p. 28 (R. 135). He testified that in the early morning hours of October 25, 2002, the girl in bed with him, Nicole, got up and "was just part way out the door and she looked back at me with a startled expression on her face." *Id.*, p. 29-31 (R. 136-138). Ronald Rolle said that he saw someone with a shotgun and saw the fire from the gun when it was shot, wounding him in the leg. *Id.*, p. 30 (R. 137). After Ronald Rolle grabbed the gun he saw that it was a shotgun, and showed where he was shot in the leg. *Id.*, p. 32 (R. 139).

Ronald Rolle wrote out a statement an hour or so after the shooting, in which he said that he saw his brother, Randall Rolle, with the shotgun, and that Randall Rolle fired the gun that hit him in the leg. *Id.*, p. 33 (R. 140). Ronald Rolle testified at the VOP hearing that his written statement was not true; that he wrote it when he was in the hospital in shock and pain, made a mistake as he actually did not see the person, the room was totally dark, and he only saw fire from the shotgun. *Id.*, pp. 33-34 (R. 140-141). He said Nicole came into his hospital room and helped him with the last few sentences in the statement, but "[n]ow, I'm definitely sure I made a mistake. *Id.*, p. 34 (R. 141). Ronald Rolle said that Petitioner lived "a certain time" at 1500 Cleveland Street and had a room there where he would keep some of his stuff. *Id.*, pp. 35-36 (R.

---

[2] The transcript refers to case number 2002-CF-4016, but it should have been case number 2002-CF-0047. *Id.*, p. 6 (R. 113).

142-143).  Ronald Rolle also said that his father owned property on F. A. Ash Way, and Petitioner lived there.  *Id.*, p. 36 (R. 143).  On cross, he said Petitioner had lived a "long time with me" at the Cleveland Street address, but was no longer living there at the time of this incident, though he would sometimes come over and spend the night.  *Id.*, p. 37 (R. 144).  Ronald Rolle said that as they were driving to the hospital, "basically Nicole asked me – we were trying to figure out – we were saying to each other, who was that, who was that?"  *Id.*, p. 39 (R. 146).  She asked if he thought it was his brother, "[a]nd I just, I guess I was panicking out – I thought I was going to die.  I didn't really know.  So, I was just panicking when the officers were asking me what happened and that's the first name I could think of."  *Id.*  On redirect, Ronald Rolle said that after the gun went off he grabbed hold of it and, "as far as I could tell, Nicole was choking the person and she let go and ran out of the room."  *Id.*, p. 40 (R. 147).  Ronald Rolle also said he walked with the person who shot him to the front door, and was pleading with the person to drop the gun but they would not.  *Id.*  On questioning from the court, Ronald Rolle identified his brother in the courtroom and said that Petitioner was not the person who shot him.  *Id.*, pp. 40-41 (R. 147-148).  Ronald Rolle said he saw the person who shot him leave through the front door and depart in a car.  *Id.*, p. 41 (R. 148).

  Chuck Perry, a Tallahassee police officer, testified.  *Id.*, p. 11 (R. 118).  Officer Perry said that on October 25, 2002, he interviewed the victim, Randall Rolle, at 1500 Cleveland Street.  *Id.*, pp. 12, 18 (R. 119, 125).  Randall Rolle and his girlfriend lived there in one of the rooms.  *Id.*, p. 17 (R. 124).  Officer Perry saw a buckshot hole in the wall of the victim's home, and a "chunk of his leg had been blown out with a shotgun blast."  *Id.*, p. 13 (R. 120).  *Randall Rolle said that his brother had done it*.  *Id.*  The

weapons were gone.  *Id.*  Petitioner's clothing was also in that residence.  *Id.*, p. 14 (R. 122).  Perry said that Petitioner was then located and the Marshal's TASC force was contacted.  *Id.*, pp. 13-14 (R. 120-121).

Mike Womble, a Tallahassee police investigator, testified that in the afternoon of October 25, 2002, he was working with the U.S. Marshal's Office Fugitive TASC Force, and several warrants were signed for Petitioner's arrest.  *Id.*, pp. 19-21 (R. 126-128).  Petitioner was at the residence on F. A. Ash Way.  *Id.*, p. 21 (R. 128).  He found Petitioner in the attic.  *Id.*  Womble said "we had the search warrant."  *Id.*, p. 22 (R. 129).  The shooting of Ronald Rolle had been in the early morning hours the same day.  *Id.*  Womble said that the TASC Force initially used the PA from outside and ordered Petitioner to come to the door.  *Id.*, p. 23 (R. 130).  After searching the entire house, they noticed an attic "lid" that was ajar over the washing machine and a box of 12 gauge shotgun shells on the top of the washing machine.  *Id.*, p. 23 (R. 130).  A mirror on a pole was pushed into the attic opening, and Petitioner pushed the mirror away.  *Id.*  Marty West, a Deputy United States Marshal, asked Petitioner if he had any guns up there, and Petitioner said yes.  *Id.*  Petitioner came out of the attic and was handcuffed.  *Id.*, pp. 23-24 (R. 130-131).  A 12 gauge shotgun and a Tec-9 millimeter semiautomatic pistol were found in the attic "right by the hole," and both were loaded.  *Id.*, p. 24 (R. 131).

On this evidence, the trial court found "strong evidence that [Petitioner] possessed a firearm" and found that he violated probation.  *Id.*, p. 43 (R. 150).  The court also found substantial evidence that Petitioner tried to kill his brother.  *Id.*, p. 44 (R. 151).

Case No. 4:06cv452-SPM/WCS

### Evidence from the trial of Petitioner for attempted murder

While not essential to the court's analysis, Petitioner testified at his trial on December 17, 2003. Ex. CCC. He admitted under oath that he possessed the shotgun, that he was on his brother's room that night, and he claimed that the gun fired by accident. *Id.*, pp. 8-12, 24-30. He admitted he was in the attic when the Marshals came to arrest him. *Id.*, p. 34.

### Legal analysis

"A third party's consent to search an area is valid if he has mutual use of it, with joint access to or control of the area for most purposes" United States v. Brazel, 102 F.3d 1120, 1148 (11th Cir.), *cert. denied*, 118 S.Ct. 79 (1997), *citing*, United States v. Matlock, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974); United States v. De Parias, 805 F.2d 1447, 1458 (11th Cir. 1986), *cert. denied*, 482 U.S. 916 (1987), *also citing* Matlock. Additionally, officers conducting a valid arrest are authorized to make a limited "protective sweep" of adjacent areas to be sure that weapons are not available that might cause a risk to the officers. Holmes v. Kucynda, 321 F.3d 1069, 1082 (11th Cir. 2003).

> A protective sweep "is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."

United States v. Delancy, 502 F.3d 1297, 1306 (11th Cir. 2007), *quoting*, Maryland v. Buie, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). "Absent a valid Fourth Amendment claim, a claim of ineffective assistance of counsel for failure to

pursue the claim is without merit."  Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986).

Petitioner had several chances in state court to put on evidence.  Petitioner has "the burden of rebutting the presumption of correctness [of state court findings of fact] by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  He has failed to do that.  He has also failed to show that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2).  An evidentiary hearing in this court is not permitted under these circumstances.  See also, Schriro v. Landrigan, 127 S.Ct. 1933, 1940, n. 1, 167 L.Ed.2d 836 (U.S. 2007) (citing § 2254(d)(2)).  Even where not barred, the court has discretion to deny a hearing if the record refutes the allegations or otherwise precludes relief.  127 S.Ct. at 1940, 1943-44 (citations omitted).  The record clearly establishes that Petitioner is not entitled to relief, so even if the court had the discretion a hearing is not warranted in this case.

Petitioner has also failed to show that the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  Petitioner has failed to show anything wrong with the search of 1500 Cleveland Street.  Ronald Rolle lived there.  He had just been shot, and he had just told the police officer who arrived on the scene that Petitioner shot him.  He made the same statement in written form at the hospital.  He gave the key to the residence to the police.  Petitioner's argument about identity theft is completely beside the point.  Even if Petitioner had been wrongly accused of identity

theft, he shot his brother.³  Consent to search 1500 Cleveland Street existed.  The officers did not need a search warrant.

Petitioner argues that the search of the F. A. Ash Way residence was unlawful as well, but he has produced no evidence to support this assertion.  The officers entered that residence after announcing themselves and after Petitioner failed to appear.  They had a warrant for Petitioner's arrest.  Ronald Rolle had told the officers that Petitioner shot him.  The shotgun was missing.  Petitioner knew this, and he was in the attic with two loaded weapons.  The officers found shotgun shells on the washer and the opening to the attic was ajar.  Petitioner was not found in the main parts of the house.  When a mirror on a long pole was inserted into the opening, Petitioner pushed it away.  Petitioner was ordered to get out the attic for the safety of everyone present, and he did.  Incident to this arrest, the officers, for their own safety, if nothing else, were authorized to go into the attic to be sure no one else with a weapon was up there.  They found the shotgun and a handgun in the attic, both loaded.  This was entirely proper protective sweep incident to an arrest pursuant to an arrest warrant, even if there had not been a search warrant.  Still, Officer Womble said there was a search warrant and Petitioner has come forward with no evidence to the contrary.

As a consequence, Petitioner's lawyer had no Fourth Amendment claim to make and was not ineffective for pursuing a frivolous motion.  Petitioner had no Fourth

---

³ Indeed, the argument about an allegedly wrongful accusation of identity theft *tends to prove*, rather than disprove, that Petitioner's shooting of his brother was not accidental.

Amendment claim to make on appeal, either, and he knew that he waived his defenses when he entered a guilty plea.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Randall Lamont Rolle challenging conviction for possession of a firearm having been previously convicted of a felony in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 2002-CF-4016, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on January 8, 2008.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.